537 So.2d 1033 (1988)
Andy H. WILLIAMS, Appellant/Cross Appellee,
v.
Robert KLOEPPEL, Individually and D/B/a Inlet Marine and Inlet Marine, Inc., a/K/a Inlet Marine Sales and Services, Inc., Appellees/Cross Appellants.
No. 88-585.
District Court of Appeal of Florida, First District.
December 29, 1988.
Rehearing Denied February 28, 1989.
*1034 Earl M. Barker, Jr., of Slott & Barker, Jacksonville, for appellant/cross appellee.
*1035 Gary B. Tullis, Jacksonville, for appellees/cross appellants.
JOANOS, Judge.
Andy H. Williams (Williams) appeals the final judgment in which the trial court determined that Williams was estopped from seeking a deficiency judgment after repossession and sale of collateral. Robert Kloeppel and Inlet Marine, Inc. (Kloeppel) cross-appeal the trial court's determination regarding the commercial reasonableness of the sale of collateral. Williams raises two issues on appeal: (1) whether an allegation of estimated value of collateral in a replevin complaint estops a secured party from proving a lesser amount of "proceeds of sale" in a later action for a deficiency judgment under section 679.504(2), Florida Statutes; and (2) whether the trial court erred in entering judgment for appellees based on the doctrine of estoppel. The issue raised on cross appeal is whether the trial court erred in finding the sale of the collateral had been conducted in a commercially reasonable manner. We reverse in part, and affirm in part.
The collateral at issue is a 1980 thirty-six foot, SS Sea Ray Boat. In March 1983, appellant sold this boat to James E. Farmer, for $95,000.00.[1] Farmer paid $20,000.00 of the purchase price in cash, and executed and delivered a promissory note in the amount of $75,000.00, together with a security agreement and financing statement, for the balance. On November 10, 1983, Farmer transferred the boat to Kloeppel as a trade-in on another boat; in the transaction, Kloeppel expressly assumed responsibility for the $75,000.00 promissory note. For record-keeping purposes, Kloeppel placed a value of $83,466.00 on the boat.
The boat remained at Kloeppel's business, Inlet Marine, from November 10, 1983, until it was delivered to appellant on July 11, 1984. During that time, Kloeppel attempted, albeit without success, to sell the boat for $95,000.00, by placing advertisements in Jacksonville, Fort Lauderdale, Miami, and Tampa Bay newspapers. Farmer and Kloeppel defaulted on the note, and in June 1984, Williams filed a replevin action for the boat's repossession. Among other things, the replevin complaint stated that the boat had a present estimated value of $75,000.00.
Thereafter, Williams kept the boat at his marina, where he effected some repair and maintenance on it, and then offered it for sale in the normal course of his business. After advertising the boat for sale in the Florida Times Union and Boat Trader magazine, Williams received an offer of $65,000.00 from a Jacksonville physician. When Williams notified Kloeppel of the offer, Kloeppel asserted the boat was worth more than $65,000.00. Although an agreement was prepared, the sale did not go through. Kloeppel did not produce a buyer, and did not offer to buy the boat himself, although Williams suggested that he do so.
Later, Williams was contacted by a yacht broker who had seen the advertisement in Boat Trader magazine. The broker flew to Jacksonville to view the boat, but did not make an offer at that time. After conferring with his client, the broker extended an offer of $63,000.00, which Williams did not accept; instead, he attempted to negotiate a better price. Prior to his negotiations with the broker, Williams had been in contact with Pompano Air Center about a Piper Saratoga that had been offered for $67,500.00. Williams advised the broker that if his client was willing to purchase the plane, he would consider trading the boat for the plane. Ultimately, Williams was able to get the price of the plane reduced to $65,000.00. Since the agreed price for the boat was $63,000.00, Williams gave the broker a check for $2,000.00, less charges for work ordered by the buyers.
Testimony at the hearing was conflicting with respect to the condition and value of the boat at the time of repossession. According to William's testimony, the boat was dirty, the canvas top for the flying *1036 bridge was missing, the generator did not work, the cockpit deck was rotten, and the metallic trim was rusted. Williams valued the boat at $55,000.00, both at the time of repossession in July 1984, and at its sale on October 30, 1984. Kloeppel agreed there was evidence of rotting in the decking, but asserted that otherwise the boat was in very good condition. In Kloeppel's opinion, the boat was worth $83,000.00.
The trial court found that the sale of the boat had been conducted in a commercially reasonable manner, and that the expenses incurred in obtaining, holding, and preparing the boat for sale were reasonable. The trial court further found that Williams was estopped by the allegations of his replevin complaint from claiming that the collateral was worth less than $75,000.00, concluding that Williams was not entitled to recover any sums from Kloeppel individually, or in his capacity as owner of Inlet Marine, Inc. Thereafter, the trial court denied Williams's motion for rehearing and for new trial.
The Uniform Commercial Code remedies available to a secured creditor in the event of debtor default are cumulative and should be pursued seriatim. See Land v. Cessna Aircraft Co., 466 So.2d 1265, 1268 (Fla. 1st DCA 1985); Swindel v. General Finance Corp. of Florida, 265 So.2d 393, 394-395 (Fla. 1st DCA 1972). The secured creditor may take possession of the collateral, may dispose of the collateral by public or private sale in a commercially reasonable manner, and may obtain a judgment for any deficiency after the sale. §§ 679.501, 679.503, and 679.504, Fla. Stat. (1985); Land, 466 So.2d at 1268.
A secured creditor's entitlement to a deficiency judgment is not automatic. Rather, consideration must be given to the commercial reasonableness of the disposition of the collateral by the secured party. See, for example, Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362, 1364 (Fla. 1986), in which the court observed that 
The code nowhere provides that the creditor loses his right to a deficiency judgment if he does not act in a commercially reasonable manner. See J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code § 26-15 at 1127 (2d ed. 1980). However, the code does supply the debtor with a remedy... . If the collateral is disposed of in a commercially unreasonable manner, the debtor may not receive as great a credit against his debt as if the sale had been conducted in a commercially reasonable manner. The damages the debtor will suffer are equal to the difference between the price obtained in a commercially unreasonable sale and the fair market value of the collateral i.e., what it should have brought in a commercially reasonable sale. See White and Summers, supra, § 26-15 at 1133.
See also Landmark First National Bank of Fort Lauderdale v. Gepetto's Tale O' the Whale of Fort Lauderdale, Inc., 498 So.2d 920, 922 (Fla. 1986). In Landmark and in Weiner, as in the instant case, the respective debtors challenged the commercial reasonableness of the sale of collateral on grounds of insufficient notice.
In Weiner, the court held that a determination that the secured party disposed of collateral in a commercially unreasonable manner, will raise a presumption
that the fair market value of the collateral at the time of repossession was equal to the amount of the total debt that it secured. The burden to prove that the fair market value of the collateral was less than the debt will be upon the secured party. If the secured party meets this burden, he will be allowed to recover a deficiency judgment in an amount equal to the total debt minus the fair market value of the collateral as ultimately determined. (emphasis supplied.)
482 So.2d at 1365. Accord Landmark First National Bank, 498 So.2d at 922; CSI Services, Ltd. v. Hawkins Concrete Construction Co., 516 So.2d 337 (Fla. 1st DCA 1987).
The estoppel issue in this case arises in the context of a seeming inconsistency between the asserted value of the collateral at the time of repossession and at *1037 the time of sale. The principle is well settled "that litigants are not permitted to take inconsistent positions in judicial proceedings." Federated Mutual Implement & Hardware Insurance Co. v. Griffin, 237 So.2d 38, 41 (Fla. 1st DCA) cert. denied, 240 So.2d 641 (Fla. 1970). In application, this means when a court accepts a party's allegation in one suit, that party will be estopped to assert a contrary position in a later action involving the same parties and subject matter. 22 Fla.Jur.2d, Estoppel and Waiver § 53 (1980). See also Lambert v. Mutual Fire Insurance Co., 456 So.2d 517, 519-520 (Fla. 1st DCA 1984); Grauer v. Occidental Life Insurance Co. of California, 363 So.2d 583 (Fla. 1st DCA 1978), cert. denied, 372 So.2d 468 (Fla. 1979); Wooten v. Rhodus, 470 So.2d 844 (Fla. 5th DCA 1985).
The final judgment in this case contains the trial court's express findings (1) that the sale of the collateral was made in a commercially reasonable manner, and (2) that appellant was estopped, due to the allegations of the replevin complaint, from claiming that the value of the collateral was less than $75,000.00. Despite its finding that the sale was commercially reasonable, by this estoppel finding and the concomitant denial of a deficiency judgment, the trial court in effect provided the debtor with the remedy for a commercially un reasonable sale. That is, the debtor was awarded an additional credit in the amount of the difference between the fair market value of the collateral at the time of repossession and the amount the collateral brought in a sale which the trial court found was commercially reasonable. See Weiner, 482 So.2d at 1364.
The trial court's ruling in this regard does not comport with the applicable statutes or case law. First, although equitable principles, such as estoppel, are available to supplement the code provisions,[2] in the event of conflict the code provisions will prevail. See Weiner, 482 So.2d at 1364. Since the code expressly provides that the secured creditor is entitled to a deficiency if he disposes of the collateral in a commercially reasonable manner, the trial court's application of estoppel to preclude a deficiency judgment in this case is both inconsistent with its finding that the sale was commercially reasonable, and is in conflict with the provisions of the code.
Second, the rule that litigants are precluded from taking inconsistent positions in successive judicial proceedings is inapplicable in the context of a secured party's right to take possession of and to dispose of the collateral securing a debt. In the instant case, Williams provided an estimate of value of the collateral in order to comply with the provisions of § 78.055(1), which states that a replevin complaint must contain "a statement, to the best knowledge, information, and belief of the plaintiff of the value of such property and its location." Furthermore, the estimate of value in a replevin complaint is for the purpose of establishing the amount of a bond, should the party in possession seek a stay of delivery of the property. § 78.065(2)(e), Fla. Stat. (1985). Therefore, appellant's position with respect to the allegation of the value of the collateral in the replevin action is unrelated to a showing of entitlement to a deficiency judgment upon disposition of the collateral after default. A secured creditor's entitlement to a deficiency judgment depends upon the commercial reasonableness of the sale, which in turn establishes the fair market value of the collateral.
If it is determined that disposition of the collateral was commercially reasonable, then the secured creditor is entitled to "a deficiency judgment in an amount equal to the total debt minus the fair market value of the collateral as ultimately determined." Weiner, 482 So.2d at 1365. On the other hand, if it is determined that the secured party disposed of the collateral in a commercially unreasonable manner, "there will arise a presumption that the fair market *1038 value of the collateral at the time of repossession was equal to the amount of the total debt that it secured." The secured party then bears the burden of proving that the fair market value of the collateral was less than the debt it secured. Id.
In the instant case, the trial court's finding of commercial reasonableness with regard to disposition of the collateral, in effect, established appellant's entitlement to a deficiency judgment. Moreover, the record reflects that Williams demonstrated that the fair market value of the collateral was less than the debt it secured.
The elements by which the commercial reasonableness of a sale may be evaluated are set forth in section 679.504(3), Florida Statutes (1985), which provides in part:
Disposition of the collateral may be by public or private proceedings ... but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.... reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor ...
In Landmark First National Bank, supra, the court indicated that under the statutory notice provisions, the debtor should be advised whether the sale is to be public or private. 498 So.2d at 922. Neither the statute nor decisions dealing with the subject specify the standard or test for commercial reasonableness of disposition of collateral. While it is clear that reasonable notice is a significant factor in a finding of commercial reasonableness, see, for example, Landmark First National Bank, supra, a failure to provide reasonable notice will not preclude a secured creditor from seeking a deficiency judgment. Landmark, 498 So.2d at 922. In other words, a sale without prior notice raises the rebuttable presumption of commercial unreasonableness contemplated by the Weiner decision.
In this case, the trial court considered evidence that the repairs effected by Williams were essential to preserve the boat's value, that the mooring or storage charges for the boat were consistent with charges imposed by other boatyards in the Jacksonville area, and that Williams's efforts to dispose of the collateral were consistent with similar efforts undertaken or recommended by Kloeppel. In addition, the record reflects that Williams notified Kloeppel that he had been offered $63,000 for the boat, and upon Kloeppel's contention that the boat was worth more  urged Kloeppel to purchase the boat. Although there is nothing in the record to indicate that Williams advised Kloeppel of the specifics of the second transaction whereby Williams acquired a Piper aircraft as payment for the boat, this factor alone would not vitiate the commercial reasonableness of the sale. The purchase price of the aircraft was $65,000; to effect the sale, Williams transferred the boat plus $2,000 less cost of repairs requested by the buyer. Thus, the selling price of the boat was nearly equal to the earlier offer which was never consummated.
In summary, there is record support for the trial court's finding that disposition of the collateral was commercially reasonable, and that expenses incurred in the sale were reasonable. Since application of estoppel principles in this case would contravene rather than supplement the provisions of the code, we find the trial court erred in its application of estoppel to preclude a deficiency judgment.
Accordingly, we reverse the trial court's determination with regard to the issues raised on appeal, and affirm with regard to the issue raised on cross appeal, and remand for proceedings consistent with this opinion.
WIGGINTON and BARFIELD, JJ., concur.
NOTES
[1] James E. Farmer was named as a defendant in the replevin complaint, but is not a party to this appeal.
[2] § 671.103, Fla. Stat. (1985), provides in part:

Unless displaced by the particular provisions of this code, the principles of law and equity, ... shall supplement its provisions.