VAN NORTWICK, Judge.
Barry Witchell seeks review of a final judgment assessing damages against him in the amount of $575,855.52 for sums due J.H. Londono, appellee, under a promissory note. Witchell challenges (i) the trial court’s failure to apply the proceeds of the sale of collateral on a pro rata basis to reduce the indebtedness under two promissory notes secured by the collateral, and (ii) the trial court’s use of an allegedly inadmissible appraisal report to determine the value of the collateral. We affirm in part and reverse in part.

Factual and Procedural Background

The circumstances underlying this appeal began in 1984, when Kent Realty Corporation purchased certain real and personal property comprising an apartment complex in Tallahassee, Florida from a general partnership comprised of appellee J.H. Londono, and two others. The purchase was financed by the partnership’s acceptance of a purchase money promissory note (Note # 1) and mortgage. At the time of the transaction, Witchell was president of Kent Realty Corporation. He was not, however, personally obligated under Note # 1.
In 1989, Kent Realty defaulted under Note # 1 and the partnership instituted a foreclosure proceeding. On September 1, 1989, the parties entered into an agreement under which a new promissory note (Note #2) would be given to the partnership for accrued interest and late charges due under Note #1 and fees and costs incurred in the foreclosure proceedings. The agreement provided that Note #2 was given in consideration for the partnership’s dismissal of the pending foreclosure suit against Kent Realty. This agreement states in pertinent part:
2.... Note #2 shall be guaranteed by Witchell, and his obligation on Note #2 shall not be extinguished by reason of the recording of the. Deed [in lieu of foreclosure, held by an escrow agent] as set forth herein, if the same is recorded pursuant to the terms hereof. Note.#2 shall be secured by the Mortgage, and the parties hereto agree that this Agreement shall act as a modification and spreading agreement to the Mortgage such that the same secures Note # 2, as well as Note # 1.
* * * * * *
6. In the event the Deed [in lieu of foreclosure, held by an escrow agent] is recorded as provided for herein, and in the event Note # 2 is- paid in whole or in part by Witchell, and thereafter for a period not exceeding five (5) years from the recording of the Deed, Mortgagee sells the property [the collateral under the mortgage] at arms length for a net price in excess of $3,400,000.00, Witchell shall receive from such excess the lesser of such amounts as he paid on Note # 2, or the net proceeds.
* * * * * *
7. Witchell joins in the execution hereof for the purpose of guaranteeing Note #2, and if the same is not paid by Mortgagor it will be paid by Witchell. Witchell also agrees to sign Note #2 as a co-maker.
The principal amount of Note # 2 was $277,-426.16. Witchell signed as a co-maker of Note # 2. Subsequently, Londono acquired the partnership interests of the other members of the partnership, and he became the sole owner of Note # 2.
In November 1991, Londono filed a complaint seeking to foreclose the mortgage (Count I) and to enforce Note #2 against Witchell individually (Count II). The foreclosure was uncontested and a deed transferring both the real and personal property to appellee was recorded. Witchell was not served and collection of Note #2 was not pursued at that time. The final judgment of foreclosure, entered January 10, 1992, set forth the total amount due Londono for principal under Note # 1 with interest accrued from May 1, 1990; the principal under Note # 2 with interest accrued from September 1, 1989;. and real estate taxes for 1990 and 1991 *798 on the collateral property, costs and a reasonable attorneys fee.
On March 23/1995, Londono filed a complaint against Witchell for damages arising from the default of Kent Realty under the two notes. At the non-jury trial, Witchell argued that, if he owed anything to appellee, the amount found to be due under Note #2 should be credited pro rata by the market value of the real and personal property received by Londono in the foreclosure action. Witchell’s counsel also objected to admission of the appraisal report offered by Londono, asserting that the appraiser failed to produce the data underlying his opinion as to value. The trial court reserved ruling on the admissibility of the appraisal report.
In the final judgment, the trial court ruled that Witchell was personally obligated under Note #2. With respect 'to the pro rata allocation of the value of the mortgage between Note #1 and Note # 2, further the court found that:
The parties had no agreement as to the pro-ration of the value of the mortgaged property between the two notes. The only provisions in the security agreement which gave Witchell the right to escape personal liability for the amount due on Note # 2 were contingent on Loridono’s realizing at least $3,400,000.00 in cash from a sale of the mortgaged property or by his refusing an offer of that much cash or more. There is no evidence of such a sale or of such a refusal.
The court also determined that the appraisal report was admissible, and accepted ,the appraiser’s opinion that the mortgaged real property had a fair market value of $2,800,000.00 on the date of the foreclosure sale. The trial court then calculated the amount due under Note # 2, based upon the terms of the note and the parties’ agreement, and entered final judgment in favor of Lon-dono and against Witchell in the amount of $575,855.52.

Allocation of Proceeds of Foreclosure Sale

As his first issue raised in this appeal, Witchell contends that the proceeds of.the foreclosure sale or the value of, the collateral sold should have been allocated on a pro rata basis to reduce the amounts owed under Note # 1 and Note # 2. Based on the agreement between the parties as to allocation of the value or proceeds of the sale of the collateral, we cannot agree.
We agree with Witchell that Florida law recognizes the general rule that “when there are multiple notes with the same maturity date and secured by the same collateral, the proceeds of the foreclosure should be allocated to reduce the indebtedness owed on each note on a pro rata basis.” Thunderbird, Ltd. v. Great Am. Ins. Co., 566 So.2d 1296, 1301 (Fla. 1st DCA 1990); see also Kohl v. First Trust Co. of Tonawanda, 255 App. Div. 123, 6 N.Y.S.2d 84, 89 (1938)(where an agreement is silent regarding application of proceeds of a foreclosure sale, proceeds should be applied ratably among multiple notes secured by same collateral); Petit v. Blenkiron, 16 Cal.App.2d 751, 61 P.2d 527, 528 (1936)(in absence of agreement as to priority of satisfaction of notes secured by real property, “the general rule is that the proceeds shall be divided ratably between the several obligations”).
Although the parties’ agreement here spread the mortgage to secure both notes, which by itself would be consistent with a pro rata treatment of the value of the collateral, as found by the trial court, the parties also expressly agreed that on the sale of the mortgaged property Witchell would receive credit against his liability under Note #2 only to the extent that the sale of the property produced net proceeds in excess of $3,400,-000, the principal amount of Note ,# 1. Thus, we approve the trial court’s refusal to construe the parties’ agreement as requiring a proportional allocation of the foreclosure proceeds to reduce the indebtedness owed on Note # 1 and Note # 2.

Admissibility of Appraiser’s Expert Opinion

As his second point, Witchell maintains that the trial court improperly determined the value of the collateral on the basis of an inadmissible appraisal report. Witchell argues that the appraiser’s expert testimony should not have been admitted because the *799 appraiser failed to provide the underlying facts and data for his opinion.
The admissibility of expert opinion is governed by section 90.705, Florida Statutes, which provides:
(1) Unless otherwise required by the court, an expert may testify in terms of opinion or inferences and give' reasons without prior disclosure of the underlying facts or data. On cross-examination he shall be required to specify the facts or data.
(2) Prior to the witness giving the opinion, a party against whom the opinion or inference is offered may conduct a voir dire examination of the witness directed to the underlying facts or data for the witness’s opinion. If the party establishes prima facie evidence that the expert does not have sufficient basis for his opinion, the opinions and inferences of the expert are inadmissible unless the party offering the testimony establishes the underlying facts or data.
The admission of evidence is a matter of trial court discretion. Forester v. Norman Roger Jewell & Brooks, 610 So.2d 1369, 1372 (Fla. 1st DCA 1992), Similarly, “[a]n appellate court is bound by a trial court’s resolution of conflicting evidence unless the trial court’s finding of fact is not supported by competent and substantial evidence.” Bradley v. Waldrop, 611 So.2d 31, 32 (Fla. 1st DCA 1992).
We conclude that the trial court did not abuse its discretion in admitting the property appraisal report into evidence. The appraiser here testified that the underlying facts and data supporting his opinion were contained in his report. The appraiser’s report here sets forth the facts and data underlying the appraiser’s opinion as to value of the subject real property, in accordance with generally accepted property appraisal standards and methodology. Witchell elected, however, not to examine the áppraiser as to such facts and data.
We do agree with Witchell that the final judgment, and the appraiser’s opinion and report on which the trial court’s finding of value is based, are silent concerning the value of the personálty of- the apartment complex.[1] Therefore, we reverse as to the total value assigned to the collateral. Upon remand, the trial court may conduct such further proceedings deemed necessary to determine whether the property appraiser’s opinion regarding the value „ of the subject collateral included the value of the personalty. If the personalty was not included within the appraiser’s opinion as to total value, the value. determination should be amended to include a $300,000.00 value for the personalty.[2]
Accordingly, we affirm the trial court’s ruling with respect to denial of a pro rata application of the foreclosure proceeds to the indebtedness represented- by. Note # 1 and Note # 2 and the admission of the property appraisal report offered by., appellee. We reverse the trial court’s valuation of the collateral, and remand for further proceedings on this matter, to include a re-determination of the amount of the final judgment in accordance with this opinion.
MINER and DAVIS, JJ., concur.

. The apartment complex personalty is described in the addendum to, and made a part of, the foreclosure deed.

. The only evidence regarding the separate value of the personalty was Witchell’s undisputed testimony. The general rule is that an owner is qualified to testify as to the value of his property; an officer of a corporation is qualified to testify regarding value if he has experience in the management of the affairs of the corporation and has a knowledge of relevant values. Mercury Marine Div. of Brunswick Corp. v. Boat Town U.S.A., Inc., 444 So.2d 88, 90 (Fla. 4th DCA 1984); Salvage & Surplus, Inc. v. Weintraub, 131 So.2d 515 (Fla. 3d DCA 1961). The record in this case reflects that Witchell was qualified to testify as to the value of the property. - .