**ENSERCO, L.L.C.**

v.

**DRILLING RIG NORAM 253, and her appurtenances, in rem, and Sam Offshore, Ltd., in personam**

No. CIV. A. G–98–527.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 22, 2000.

James J Sentner, Jr, Gardere Wynne Sewell & Riggs, Houston, TX, for Enserco L.L.C., plaintiffs.

John David Marziotti, Griggs & Harrison, Houston, TX, for Newpark Shipbuilding Inc.

L.R. DeBuys, IV, Terriberry, Carroll & Yancy, New Orleans, LA, for Transoceanic Shipping Co., Inc., Seagull Marine, Inc.

William A Durham, Eastham Watson et al, Don Fogel, Ware Snow et al, Houston, TX, for Drilling Rig Noram, 253, and her appurtenances, in rem, Sam Offshore Ltd, in personam, defendants.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

In February of 1999, pursuant to order of this Court, a United States Marshal conducted a public sale of Defendant's drilling rig. The rig was sold for $1,000,000 to Plaintiff Enserco, L.L.C., the holder of a Preferred Ship Mortgage on the rig and the sole bidder at the sale. The Court subsequently confirmed the sale. Now before the Court are Plaintiff and Defendant's rival Motions for Summary Judgment to Set the Deficiency. Plaintiff claims that the deficiency is $19,899,024.64; Defendant claims that there is no deficiency. For the reasons stated below, both Motions are **DENIED.**

### I. *FACTUAL BACKGROUND*

In December of 1997, Plaintiff EnSerCo, L.L.C. ("EnSerCo") and Defendant Sam Offshore, Ltd. ("SAM") entered into a Credit Facility Agreement, under the terms of which SAM executed a promissory note in the amount of $12,500,000. The loan was secured by a First Preferred Mortgage ("Mortgage") on the Vanuatu Flag Drilling Rig Noram 253 ("Rig"), owned by SAM. SAM obtained the loan to

make improvements to the Rig. During June and July of 1998, EnSerCo advanced an additional $3,000,000 in funds, which SAM needed to bring the Rig from Brazil to Galveston, Texas. Only a few months later, on September 30, 1998, SAM failed to make a required payment under the terms of the Mortgage. Consequently, on October 16, 1998, EnSerCo arrested the Rig and, along with Newpark Shipbuilding, filed suit seeking to foreclose.

On January 28, 1999, the Court entered an Interlocutory Decree and Order for the sale of the Rig. The Court's order provided that the minimum bid was $1,000,000 and that EnSerCo was allowed to bid its mortgage debt. Subsequently, on February 19, 1999, the Rig was sold at public auction for $1,000,000 to EnSerCo, the sole bidder. The Court confirmed the sale on April 26, 1999 and distributed the sale proceeds. After payment of other liens and expenses, EnSerCo took in satisfaction of its Mortgage $81,830.84 of the money it paid. EnSerCo and SAM now request the Court to set the remaining deficiency.

## II. *ANALYSIS*

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the law-

suit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

### B. *Applicable Legal Principles*

■ Federal law governs deficiency judgments under the Ship Mortgage Act. *See J. Ray McDermott & Co. v. Vessel*

*Morning Star,* 457 F.2d 815, 818 (5th Cir. 1972). The deficiency owing under a mortgage is calculated "by establishing the difference between the total outstanding obligation and the 'fair market value' [at the time of sale] of the vessel involved." *Bollinger & Boyd Barge Serv., Inc. v. M/V Captain Claude Bass,* 576 F.2d 595, 598 (5th Cir.1978). Ordinarily, the price determined in a fairly conducted sale is considered the fair market value. *See Walter E. Heller and Co. v. O/S Sonny V.,* 595 F.2d 968, 971 (5th Cir.1979); *United States v. F/V Fortune,* 1987 WL 27274, *4 (D.Alaska April 14, 1987). Upon a showing of a "probable significant disparity between the sales price of the property and its fair value," however, the Court must use the latter to determine the offset. *Heller,* 595 F.2d at 972. The need for heightened scrutiny arises when, as in this case, the property is sold to the foreclosing creditor, as opposed to a third-party. *See id.*

■ EnSerCo does not dispute that federal law applies, but argues that the Mortgage itself governs the deficiency calculation. According to EnSerCo, under the clear terms of the Mortgage, the judicial sale price, not the fair market value, is to be used to calculate the deficiency. EnSerCo further claims that the net proceeds of the judicial sale, after paying expenses and other liens, was $81,830.84. Thus, EnSerCo deducts this figure from the amount they claim is still outstanding[1] to reach a deficiency of $19,899,024.64.

The relevant Mortgage provision to which EnSerCo refers reads:

In the case of any such sale, the Mortgagee, if it is the purchaser, shall be entitled for the purpose of making settlement or payment for the property purchased to use and apply the Indebtedness hereby secured in order that there may be credited against the amount remaining due and unpaid thereon the sums payable out of the net proceeds of such sale to the Mortgagee after allowing for the costs and expenses of sale and other charges; and thereupon such purchaser shall be credited, on account of such purchase price, with the net proceeds that shall have been so credited upon the Indebtedness hereby secured. At any such judicial sale, the Mortgagee may bid for and purchase such property and upon compliance with the terms of sale may hold, retain and dispose of such property without further accountability thereof.

Defendant SAM asserts that this language is simply a standard clause allowing credit bids at the foreclosure sale. The Court agrees. Nowhere in the provision is deficiency defined.[2] The Court is thus not foreclosed in any way by the terms of the Mortgage from determining whether the judicial sale price differed significantly from the fair market value of the Rig.

■ Defendants have offered evidence of a significant disparity between the judicial sale price and the fair market value of the Rig. Mark E. Peterson, who provided economic consultation to EnSerCo, testified that he valued the Rig at between $11,000,000 and $11,500,000, and that EnSerCo was insuring the rig for more than $15,000,000. Mr. Peterson also testified that after the foreclosure sale, EnSerCo: 1) recognized that "$1 million bid [was] not representative of the current value of the

---

1. EnSerCo claims principal and interest to be $19,849,639.00, measured as of August 31, 2000. It also claims attorneys fees in the amount of $115,663.36 and expenses in the amount of $5,553.12. Defendant SAM focus on the indebtedness as of February 19, 1999, the date of the foreclosure sale, which it claims to be $16,012,031.30.

2. SAM also argues, in the alternative, that under Fifth Circuit law, parties may not contract around federal law governing deficiency judgments, citing *Morning Star,* 457 F.2d at 819. Though the dissenting judge claimed that the Court was undermining freedom of contract principles, the Court in *Morning Star* only held that Louisiana statute may not limit application of the Ship Mortgage Act. *See id.* This Court does not decide this issue, as the Mortgage provisions in this case do not discuss the calculation of a deficiency.

[R]ig," 2) recognized that a one bidder public auction was "not a true open market sale," 3) received much interest in the rig from various drilling companies, 4) continued to carry the value of the Rig at between $11,000,000 and $11,500,000 on its books, 5) rejected a $7,000,000 appraisal done on the Rig in March 1999 as too low, and 6) received purchase offers for the rig of $17,000,000 approximately two months after the foreclosure sale. Furthermore, David Kent, owner of Rigzone.com, a company which follows and publishes information regarding offshore rig charter and sale activity, testified in a sworn affidavit that the Rig had a fair market value at the time of the foreclosure sale of between $17,000,000 and $19,000,000. Plaintiff has offered no counter evidence at all, insisting instead that the sale price in a public judicial sale is the best indicator of fair market value.

■ Although this Court confirmed the sale of the Rig, such sale will not be set aside unless "the sales price is so gross as to shock the conscience." *Heller,* 595 F.2d at 971. It does not follow from the fact that a sale is confirmable, however, that there can be no discrepancy between the sale price and the fair market value. *Id.* at 972. In this case, although the sale was public, it occurred with only six days of public notice. Consequently, EnSerCo was the only bidder and took the Rig at the minimum bid of $1,000,000. The purchase of a drilling rig valued in the millions of dollars is a sophisticated business decision requiring planning and investigation. Thus, six days notice is not likely to attract many purchasers. It also bears mentioning that EnSerCo was entitled to bid the full amount it was owed to drive up the price in the event that there were other bidders; any prospective purchaser would surely take this into account in determining what a minimum successful bid would have to be. In light of these circumstances and the substantial uncontroverted evidence presented by Defendants, it appears beyond any doubt that $1,000,000 was not anywhere close to the fair market value of the Rig at the time of the foreclosure sale. Thus, Defendant's Motion for Summary Judgment is **DENIED.**

■ Having determined that a significant disparity exists, the Court next considers Defendant SAM's Motion for Summary Judgment. SAM claims that the fair market value of the Rig was between $17,000,000 and $19,000,000. Although Plaintiff has not controverted the evidence presented by SAM, that evidence does not conclusively establish that the fair market value of the vessel was over $17,000,000. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985) (holding that there can be no default summary judgment); *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir.1985) (noting that under Rule 56, "the nonmovant is under absolutely no obligation to respond unless the movant discharges the initial burden"). The evidence presented suggests that the value of the Rig may have been anywhere between $11,000,000 and $19,000,000. It would be premature for the Court to determine the exact value of the Rig on the basis of the evidence now before it. Thus, Defendant's Motion for Summary Judgment is **DENIED.**

### III. *CONCLUSION*

For the reasons stated above, the Court **DENIES** both Plaintiff's and Defendant's Motions for Summary Judgment. The sole issues for trial will be the amount of indebtedness and the fair market value of the Rig at the time of the sale. Each side is entitled to two fact witnesses and two expert witnesses each and no more. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**