Winston **KNAUSS**, Plaintiff,

v.

Solomon **DWEK**, Defendant.

Civil Action No. 01–3662(MLC).

United States District Court, D. New Jersey.

Oct. 22, 2003.

Kevin E. Hoffman and Thomas F. Verrastro, Kent & McBride, P.C., Woodbridge, NJ, for Plaintiff.

Frank Peretore, Peretore & Peretore, P.C., Sparta, NJ, for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This is an action under 46 U.S.C. §§ 31303, *et seq.* ("Ship Mortgage Act"), for a deficiency judgment. The plaintiff, Winston Knauss ("Knauss"), moves for summary judgment against the defendant, Solomon Dwek ("Dwek"), for payment of a deficiency judgment of $950,000 along with interest and costs. Dwek opposes the motion, and cross-moves for summary judgment dismissing the complaint on the sole ground that Knauss did not give him notice of the sale of the ship that secured his debt to Knauss. The motion and the cross motion will both be denied. The Court holds that Knauss is legally entitled to seek a deficiency judgment against Dwek because Knauss was not required to provide Dwek with notice of the sale of the ship by either the parties' agreement or the governing law. The Court further holds that genuine issues of material fact exist as to whether Knauss is equitably estopped by his conduct toward Dwek from collecting a deficiency judgment.

## *BACKGROUND*

Camelot Casino Cruises, Inc. ("Camelot") purchased from Knauss in December 1998 a vessel named the "Sir Winston" a/k/a "Excalibur," later known as the "Canaveral Star" ("the Ship"). (Knauss Aff. at ¶ 2.) As part of the transaction, Dwek executed a First Preferred Ship's Mortgage ("the Mortgage") on the vessel, securing Camelot's obligation on the repayment of a debt of $950,000. (*Id.;* Dwek Aff., Ex. A.) Dwek signed the Mortgage twice, once as "Vice President of Camelot

Casino Cruises, Inc." and once as "Personal Guarantor." (*Id.*) In conjunction with this Mortgage, Dwek in his personal capacity also executed a promissory note ("the Note") for $950,000, in favor of Knauss. (Knauss Aff. at ¶ 2.)

Camelot defaulted on the Mortgage in mid–1999. (*Id.* at ¶ 5.) Camelot filed for bankruptcy protection in November 1999 in the Middle District of Florida, at which time Camelot moved for permission to sell the Ship outside the ordinary course of business. (*Id.* at ¶ 6.) The motion was granted, and the Ship was sold to Bernie Weintraub as trustee of the Space Coast Cruises Revocable Trust ("Weintraub") in April 2000. (*Id.* at ¶¶ 6–8.) Weintraub executed three documents as part of this transaction: an "Assumption of First Preferred Ship's Mortgage," wherein Weintraub assumed all obligations held by Camelot; a Second Preferred Mortgage; and a promissory note in favor of Knauss for $950,000. (*Id.* at ¶ 8; Knauss Sub., Ex. 3.) At the time of this transaction, Dwek sought to be released from his personal liability as guarantor under the Mortgage and the Note, but Knauss refused to release him.[1] (Knauss Aff. at ¶ 10.)

Weintraub subsequently defaulted, and in response Knauss instituted an in rem foreclosure action against the Ship in the United States District Court for the Southern District of Florida ("District Court"), seeking, *inter alia,* an interlocutory sale of the Ship pursuant to 46 U.S.C. § 31325(b)(1) and 28 U.S.C. § 2004. (*Id.* at ¶ 12.) In November 2001 the District Court ordered that the Ship be offered for private sale for 90 days, and that if no acceptable offer was made during that time, that the Ship be sold at an auction conducted by the United States Marshal's Service. (Knauss Sub., Ex. 13.) Dwek maintains that he or his counsel received notice of the in rem action, and of the order that the Ship be sold. (Dwek Aff. at ¶¶ 10–11.)

Knauss received one offer to purchase the Ship for $1.5 million. (Knauss Aff. at ¶ 18.) Dwek's counsel received notice of this offer. (*Id.* at ¶ 19; Dwek Aff. at ¶ 11.) This offer was withdrawn, however. (Knauss Aff. at ¶ 20.) Dwek alleges that neither he nor his counsel were informed that this sale did not go through. (Dwek Aff. at ¶ 13.) At the end of the 90–day period for private sales, the Ship was sold at a United States Marshal's Public Auction on February 12, 2002, for $645,000. (Knauss Aff. at ¶ 25.) Dwek asserts that he was not given notice of this sale. (Dwek Aff. at ¶ 15.) The purchaser, Mustafa Kilic, subsequently moved to confirm the sale. (Knauss Aff. at ¶ 26.) Dwek objected on the grounds that the price was "grossly inadequate" and that he was prepared to bid substantially higher. (Knauss Sub., Ex. 20.) After a hearing, the District Court rejected Dwek's objection and granted the motion to confirm the sale. (*Id.*, Ex. 23.)

## DISCUSSION

### I. Summary Judgment Standard

A court may grant a motion for summary judgment

if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

1. Dwek claims Knauss did release him from liability under the Mortgage and the Note. (Dwek Opp. Br. at 16–18.) However, the correspondence between Dwek and Knauss surrounding the Weintraub transaction amply demonstrates that Dwek remained liable as a guarantor. (Knauss Sub., Exs. 4 & 5.) Further evidence of Dwek's continued liability is that while Weintraub assumed Camelot's obligations under the Mortgage, he did not assume Dwek's personal obligations as guarantor. (*Id.*, Ex. 3.) Dwek's bald contention that this issue is a "he said, she said" dispute precluding summary judgment is without support. (Dwek Opp. Br. at 19.)

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The summary judgment movant must show initially that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met that initial burden, the nonmovant must present evidence establishing that a genuine issue of material fact exists, making it necessary to resolve the difference at trial. *Id.* at 324, 106 S.Ct. 2548; *Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 F.2d 1103, 1109 (3d Cir. 1985). The nonmovant, rather than rely on mere allegations, must present actual evidence raising a genuine issue of material fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge's role at the summary judgment stage is not to weigh evidence, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505. A fact is material only if it might affect the action's outcome under governing law. *Id.* at 248, 106 S.Ct. 2505. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

## II. *Applicable Law*

The Court must determine at the outset what law to apply here. "In general, we respect the choice of law that parties agree upon to resolve their private disputes." *Gen. Elec. Co. v. Deutz Ag,* 270 F.3d 144, 155 (3d Cir.2001). This action arises out of a private agreement entered into by Knauss and Dwek. The Mortgage states, in pertinent part,

> 6. GOVERNING LAW: The parties have chosen Federal Law ... to cover all of the provisions of this Mortgage.... If there are gaps in Federal Law ... the law of the STATE OF FLORIDA shall govern this Mortgage.

(Dwek Aff., Ex. A at ¶ 6.) The parties have not contested the validity of the Mortgage generally, or of this clause in particular. Thus, the Court will honor the parties' intentions as expressed in the Mortgage and apply federal law, and, where necessary, Florida law.

## III. *The Deficiency Judgment*

### a. *Dwek's Liability*

The first issue the Court must address, provided applicable law permits a deficiency judgment, is whether Dwek is actually liable for the remainder of the debt secured by the Ship. Knauss asserts that Dwek was liable as a guarantor when the Mortgage was signed, and that his liability was not relinquished. (Knauss Sup. Br. at 6–7.) Dwek responds that "numerous factual questions abound regarding" his continued liability and the nature of his supposed liability, precluding summary judgment. (Dwek Opp. Br. at 14–19.) Because Knauss meets his burden of showing initially that there is no genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and Dwek fails to present actual evidence to rebut Knauss's prima facie showing, *Anderson,* 477 U.S. at

249, 106 S.Ct. 2505, the Court finds that Dwek is liable for the remainder of the debt under the Mortgage.

Knauss demonstrates that Dwek was initially liable on the debt, via the Mortgage and the Note. (Knauss Sub., Exs. 1–2.) He further shows that Dwek was not released from liability by the Weintraub transaction, via the documents effecting the sale of the Ship to Weintraub and the correspondence between Knauss's and Dwek's attorneys. (*Id.,* Exs. 3–5.) Dwek does not contest the authenticity of these documents. Thus, Knauss has satisfied his initial burden of producing actual evidence that there is no genuine issue of material fact concerning Dwek's continued liability.

Dwek fails to rebut Knauss's showing. First, Dwek claims there are numerous unanswered questions of fact surrounding the Weintraub transaction. (Dwek Opp. Br. at 14.) However, he fails to substantiate his claims with any evidence, and provides the Court with nothing more than a litany of rhetorical questions. (*Id.*) This showing does not rise to the level of actual evidence required to oppose a motion for summary judgment. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Second, Dwek asserts that if he is indeed still a guarantor, it is not clear whether he is liable under a "guaranty of collection" or under a "guaranty of payment." (Dwek Opp. Br. at 15–16.) Again, however, Dwek does not produce any actual evidence to substantiate this claim—he merely states conclusorily that this "dispute" raises issues that preclude summary judgment. (*Id.*) "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 248, 106

S.Ct. 2505. Dwek has provided the Court with no such evidence. Third, Dwek claims that the Weintraub transaction constituted a novation whereby Dwek was released from liability and Weintraub was substituted in his place. (Dwek Opp. Br. at 16–18.) However, this argument again fails for lack of substantiation. Dwek signed the Mortgage both for Camelot and personally, but the Weintraub assumption released him from liability only in his official capacity as Camelot's Vice President. (Knauss Sub., Exs. 1–3.) Further, Dwek does not claim that the Note he executed in favor of Knauss was ever satisfied or cancelled. Thus, there is no dispute here. Dwek remained personally liable under the Mortgage at all times. The only real legal issue in this case, to which the Court will now turn, is whether Knauss's failure to notify Dwek personally of the February 12, 2002 sale precludes this action for a deficiency judgment. This issue presents questions of law only, and has two facets: the first concerning the terms of the Mortgage, and the second concerning the requirements of the Ship Mortgage Act.

#### b. *Compliance with the Terms of the Mortgage*

The parties dispute whether Knauss's failure to give Dwek personal notice of the February 12, 2002 sale violated the terms of the Mortgage. If personal notice was required, Knauss's failure to notify Dwek personally of the sale would put him in breach of the Mortgage agreement, and hence would prevent him from "enforc[ing] a claim for the outstanding indebtedness secured by the mortgaged vessel." 46 U.S.C. § 31325(b)(2).[2]

Paragraph 25 of the Mortgage, entitled "REDEMPTION," states "[Knauss]

---

**2.** Knauss asserts that Dwek is collaterally estopped from claiming he did not receive notice because the District Court found that Dwek did have such notice. (Knauss Sup. Br. at 14–19.) However, collateral estoppel is no bar here. The issue of Dwek's notice was not "essential to the prior judgment" of the District Court, and thus one of the prerequisites for issue preclusion is absent. (Knauss Sub.,

agree[s] to provide [Dwek] with written notice of any repossession sale" of the Ship. (Dwek Aff., Ex. A at ¶ 25.) Knauss claims that "repossession sale" denotes only those sales conducted privately, without the assistance of a court. Since the Marshal's sale was ordered by the District Court, Knauss argues, it was not a "repossession sale," and hence did not trigger the Mortgage's notice requirement. (Knauss Sup. Br. at 3.) Dwek rejoins that "repossession sale" encompasses *any* sale of the Ship, and therefore Knauss had a duty to give him personal notice of the February 12, 2002 sale. (Dwek Opp. Br. at 12.) The Court must ascertain the meaning of the term "repossession sale."

▪ Whether a court may determine the definition of a disputed contractual term on summary judgment depends on whether the term's meaning is ambiguous. *DiGiorgio Corp. v. Mendez & Co.*, 230 F.Supp.2d 552, 561 (D.N.J.2002). If the term is clear, then a court may decide its meaning on summary judgment. If it is ambiguous, its interpretation is generally a question of fact requiring trial. *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F.Supp. 275, 282 (D.N.J.1992).

"The existence or absence of ambiguity is itself a 'threshold' question of law for the court to decide." *Heffron v. Adamar of N.J., Inc.*, 270 F.Supp.2d 562, 570 (D.N.J.2003) (citing *Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.*, 989 F.2d 132, 135 n. 2 (3d Cir.1993)). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *Kaufman*, 828 F.Supp. at 283. The Third Circuit has outlined the procedure for assessing the ambiguity of a contract term:

> In determining whether a contract is ambiguous, the court assumes the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement. This does not mean, however, that the court is confined to the four corners of the written document. Rather, the court reads the contract in the context in which it was made. Therefore, to determine the parties' intentions, the court may consider, among other things, the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning.

*Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir.1999) (quotations and citations omitted).

▪ We first address the meaning of the term "repossession sale" by reference to the Mortgage itself. The Mortgage does not at any point define "repossession sale." However, the term "repossession" appears throughout the Mortgage, and its various uses shed light on the significance of Paragraph 25's choice of "repossession" to modify "sale." First, Paragraph 24(C), entitled "REPOSSESSION,"[3] affords

---

Ex. 23.) *See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir.2002).

**3.** Dwek incorrectly asserts that because this section is entitled "REPOSSESSION," the section necessarily defines "repossession," and this definition in turn controls the meaning of "repossession sale." Courts are to interpret contracts with reference to the whole of the document. *See Gleason v. Nor-*

*west Mortgage, Inc.*, 243 F.3d 130, 140 (3d Cir.2001) (noting that courts interpreting contract terms "construe the contract as a whole"). And certainly the task of statutory construction has no such interpretive presumption. *See M.A. ex rel. E.S. v. State–Operated Sch. Dist. of Newark*, 344 F.3d 335 (3d Cir.2003) ("It is a well-settled rule of statutory interpretation that titles and section headings cannot limit the plain meaning of statutory text where that text is clear.").

Knauss two alternative remedies in case of default: "the right to *repossess* the Boat without a Court Order," or "the right to *foreclose* in Federal Court under the Maritime Laws of the United States." (Dwek Aff., Ex. A at ¶ 24 (emphasis added).) As Knauss correctly observes, this differentiation of remedies suggests that "repossession" denotes a distinct self-help remedy that Knauss may initiate himself, without court supervision, while resort to judicial foreclosure is an entirely different form of addressing default. (Knauss Reply Br. at 3.) Second, Paragraph 24(D), captioned "EFFECT OF REPOSSESSION," states that as long as Knauss's "repossession of the Boat is accomplished without a breach of peace, [Dwek] agree[s to] waive all defenses available to [him] under the Uniform Commercial Code or other applicable laws pertaining to such repossession." (Dwek Aff., Ex. A at ¶ 24.) Language concerning "breach of peace" is traditionally associated with self-help repossessions, not judicial foreclosures.[4] Third, Paragraph 26, entitled "SALE OR USE OF REPOSSESSED BOAT," states: "If [Knauss] repossesses the Boat, [he] may . . . lease, charter, operate or use the Boat as [he] think[s] advisable." (*Id.* at ¶ 26.) The Eleventh Circuit has held that this exact language in a ship's mortgage "unequivocally anticipates both self-help repossession and self-help resale." *Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1512 (11th Cir.1996). In sum, the parties' use of the term "repossession" throughout the Mortgage leads the Court to conclude that a "repossession sale" signifies a sale con-

ducted privately, without court supervision.

The Court's analysis is not limited to the four corners of the mortgage, alone. *Pacitti*, 193 F.3d at 773. A review of the case law reveals that the term "repossession sale" denotes a sale conducted without judicial supervision. Numerous cases applying Florida law describe non-judicial sales of collateral with the term "repossession and sale." *See, e.g., Dietrich,* 72 F.3d at 1512 n. 6; *First Fla. Bank, N.A. v. Howard,* 604 So.2d 1286, 1287 (Fla. 5th DCA 1992); *Ford Motor Credit Co. v. Jones,* 584 So.2d 205, 206 (Fla.Dist.Ct.App.1991); *Williams v. Kloeppel,* 537 So.2d 1033, 1035 (Fla. 1st DCA 1988). At the same time, other cases applying Florida law use terms such as "foreclosure sale," "judicial sale," or "judicial foreclosure sale" to describe court-supervised resales of collateral. *See, e.g., In re Mobley,* 201 B.R. 851, 853 (Bankr.N.D.Fla.1996); *Frohman v. Bar-Or,* 660 So.2d 633, 634 (Fla.1995); *Witchell v. Londono,* 707 So.2d 796, 798 (Fla. 1st DCA 1998); *Allen v. Coates,* 661 So.2d 879, 883 (Fla. 1st DCA 1995); *Magnuson v. Jones,* 491 So.2d 1315, 1316 (Fla. 5th DCA 1986). "Repossession sale," then, means a sale of collateral by the creditor alone, not a sale conducted under court supervision. There is no reasonable alternative interpretation.

The undisputed facts demonstrate that Knauss did not conduct a repossession sale of the Ship as the Court construes this term, but rather a judicial sale. Knauss instituted an in rem foreclosure action in the District Court, and it was the District Court, not Knauss, that ordered and supervised the resale of the Ship.[5] Given

---

4. For example, Florida's version of the Uniform Commercial Code gives secured creditors the right to repossess collateral "[w]ithout judicial process, if it proceeds without breach of the peace." Fla. Stat. ch. 679.609(2)(b) (2003).

5. Dwek's observation that Knauss repossessed the Ship on his own prior to instituting the

foreclosure action (which observation, the Court notes, Dwek has submitted in direct contravention to the Court's published rules regarding briefs, *see* L.Civ.R. 7.1(c)) does not change the fact that the *sale* was conducted by the District Court, and not privately by Knauss. (9–15–03 Dwek Letter at 1–2.)

these facts, Dwek was not entitled to the personal notice described in Paragraph 25 of the Mortgage. We hold that the terms of the Mortgage are no bar to this deficiency action.

### c. *Compliance with the Ship Mortgage Act*

■ The parties elected to have federal law govern their agreement. The Ship Mortgage Act, 46 U.S.C. §§ 31303, *et seq.*, and the Judicial Sales Act, 28 U.S.C. §§ 2001 & 2004, form "a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam.*" *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.1972). This statutory scheme completely preempts state law. *See, e.g., Md. Nat'l Bank v. Traenkle,* 10 Fed.Appx. 194, 196–97, 2001 WL 589405 (4th Cir.2001) (affirming lower court's holding that Ship Mortgage Act preempted Maryland law regarding personal notice and deficiency judgments); *Fourchon, Inc. v. La. Nat'l Leasing Corp.,* 723 F.2d 376, 383 (5th Cir. 1984) (holding that Ship Mortgage Act preempted Louisiana state law's caps on interest rates); *Enserco, L.L.C. v. Drilling Rig Noram 253,* 126 F.Supp.2d 443, 445 (S.D.Tex.2000) ("Federal law governs deficiency judgments under the Ship Mortgage Act.").[6] Accordingly, in order to seek a deficiency judgment against Dwek, Knauss must have complied with the federal statutory scheme, but need not have obeyed state law requirements such as those imposed by Florida's version of the Uniform Commercial Code.

A mortgagee under a preferred ship's mortgage may "enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in ... a civil action against the ... guarantor for ... any deficiency in full payment of that indebtedness." 46 U.S.C. § 31325(b)(2). The Act imposes no duty on the mortgagee to give any notice to the guarantor regarding a previous judicial sale of the ship securing the debt. In order to judicially foreclose, the mortgagee must give notice "to the master or individual in charge of the vessel; any person that recorded ... an unexpired notice of a claim of an undischarged lien on the vessel; and a mortgagee of a mortgage ... that is an undischarged mortgage on the vessel," but not to the guarantor. *Id.* at (d)(1).

The court in *First Pa. Bank v. McMartin Indus.,* No. 85–2951, 1986 WL 4210 (E.D.Pa. April 3, 1986) came to the same interpretation of the Ship Mortgage Act on facts similar to those of this action. There, the defendants had guaranteed repayment of a loan made by the plaintiff to a borrower. *Id.* at *1. The loan was used to purchase a yacht, which further secured the debt. *Id.* The borrower then defaulted on the loan, the plaintiff instituted a foreclosure action, and the yacht was subsequently sold at a judicial sale. *Id.* The defendants were given no notice of the sale. *Id.* When the plaintiff then instituted a deficiency judgment proceeding against the defendants, they asserted that the plaintiff's failure to notify them of the judicial sale precluded a deficiency judgment. *Id.* at *2. The court held, *inter alia,* that the Ship Mortgage Act contains "no provision which requires the defendants to have had notice of the judicial sale.... Thus,

---

**6.** As both parties correctly observe, there exists a line of cases holding that state law procedures that are not inconsistent with the Ship Mortgage Act, such a extrajudicial self-help remedies, are not preempted. *See e.g.,*

*Dietrich,* 72 F.3d at 1513–17. However, as this action concerns a judicial remedy provided for by the Ship Mortgage Act, those cases need not concern the Court.

the defendants are incorrect in asserting that their lack of formal notice of the actual date of the judicial sale ... precludes ... a deficiency judgment." *Id.* at *4.

■ The same result obtains here. Dwek was a guarantor under the Mortgage. As such, the Ship Mortgage Act did not entitle him to any notice of a judicial sale as a predicate to an action for a deficiency judgment against him for the outstanding debt. Knauss may properly seek a deficiency judgment against Dwek under 46 U.S.C. § 31325(b)(2)(B).

### d. *Equitable Estoppel*

■ While Knauss may legally seek a deficiency judgment against Dwek, there remains an issue of equity. Dwek asserts that Knauss is equitably estopped from recovering a deficiency from him. Since the parties have consented to be governed by federal law, we apply federal principles of equitable estoppel.[7] The Third Circuit has recently elucidated the law of estoppel in admiralty cases:

> According to federal maritime law, the doctrine of equitable estoppel is grounded on a notion of fair dealing and good conscience. It is designed to aid the law in the administration of justice where without its aid injustice might result. . . . Traditionally, the doctrine of equitable estoppel operates to preclude a party who has made representations of fact through his words or conduct from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct, and has been led

thereby to change his position for the worse, and who on his part acquired some corresponding right.

*Gibbs ex rel. Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 133 (3d Cir.2002) (quotations and citations omitted). In order to sustain a defense of estoppel, a party must show: (1) "that it relied in good faith," (2) "on a misrepresentation of [fact by] another party," and (3) "this reliance caused it to change its position for the worse." *Id.* at 128.

Dwek alleges that Knauss misrepresented to him by both words and conduct the fact that the Ship would be sold for $1.5 million dollars, and thus Dwek would not be liable to Knauss for any deficiency. (Dwek Aff. at ¶ 11; 10–2–03 Dwek Letter at 1.) He states Knauss provided him or his lawyer with both documentary and oral representations to this effect. (Dwek Aff. at ¶¶ 11–12.) Dwek asserts that in good faith he relied on Knauss's promise to keep him apprised of the sale of the Ship. Dwek claims he asked Knauss to give him as much notice as possible of any potential sale of the Ship, and Knauss did not refuse to undertake this obligation. (*Id.* at ¶ 9, Ex. B.) Dwek further alleges he had been receiving all materials concerning the in rem action in the District Court, and thus reasonably expected to continue to be updated on the Ship's status.[8] (*Id.* at ¶ 10.) Dwek claims that this good faith reliance caused him to change his position for the worse because when Knauss allegedly failed to notify him of both the withdrawal of the $1.5 million bid and the February 12, 2002 sale, he was unable to appear to

---

**7.** We also observe that when a court sits in admiralty jurisdiction, as in claims brought under the Ship Mortgage Act, the federal law of equitable estoppel governs the parties' conduct. *See Marine Transportation Services Sea–Barge Group, Inc. v. Python High Performance Marine Corp.,* 16 F.3d 1133, 1139 n. 8 (11th Cir.1994).

**8.** Indeed, Dwek's attorney, Gray Gibbs, is listed on the docket sheet for the in rem action in the Southern District of Florida. (Civil Docket for Case # 00–CV–7779 as of 9–20–2002; 10–9–03 Dwek Letter at 1.)

bid on the Ship. Thus, he was exposed to a large deficiency judgment when the Ship sold for substantially less than the amount secured by his guaranty. (*Id.* at ¶¶ 13–14; 10–2–03 Dwek Letter at 1.)

 We find that genuine issues of material fact exist regarding whether Knauss is equitably estopped from recovering a deficiency. Viewing the evidence in the light most favorable to Dwek, as the Court must on Knauss's motion for summary judgment, we find that a reasonable factfinder could conclude that Knauss represented to Dwek that the Ship would be sold for the $1.5 million bid, and that Dwek reasonably relied upon that representation because Knauss by his words and/or conduct led Dwek to expect that Knauss would inform him if the deal was not completed.[9] Such reliance would have been to Dwek's detriment, as it exposed him to this deficiency action. Since we find that there is "sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party," *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, we will deny Knauss's motion for summary judgment.

## IV. *Notice to Dwek*

Dwek cross-moves for summary judgment dismissing the complaint on the sole ground that Knauss's failure to give him notice of the sale of the Ship prevents him from seeking a deficiency under the terms of the Mortgage. However, as discussed above, whether Knauss provided Dwek with notice of the sale does not dictate the outcome of this action. Knauss had no duty to notify Dwek under the Mortgage. Accordingly, Dwek's cross motion will be denied because its sole ground does not support the relief sought.

9. Knauss may, of course, seek to rebut Dwek's assertion of reasonable reliance by showing that Dwek received actual or con-

## CONCLUSION

Knauss, as mortgagee under a preferred ship's mortgage, had no duty to provide Dwek, a guarantor, with notice of the judicial sale of the ship as a condition precedent to seeking a deficiency judgment. However, genuine issues of material fact do exist regarding whether Knauss is equitably estopped from recovering a deficiency against Dwek by virtue of Knauss's conduct. Therefore, Knauss's motion for summary judgment will be denied. Dwek's cross motion for summary judgment will also be denied because its sole ground for dismissing Knauss's action is insufficient. An appropriate order will accompany this memorandum opinion.

structive notice of the failure of the private sale and the scheduling of the public sale. *See* note 8 *supra*.